1   Laurence D. King (State Bar No. 206423)
    Linda M. Fong (State Bar No. 124232)
2   KAPLAN FOX & KILSHEIMER LLP
    555 Montgomery Street, Suite 1501
3   San Francisco, CA 94111
    Telephone:  415-772-4700
4   Fax:  415-772-4707

5   Marc A. Topaz
    Richard A. Maniskas
6   SCHIFFRIN & BARROWAY
    Three Bala Plaza East
7   Suite 400
    Bala Cynywd, PA 19004
8   Telephone:  610-667-7706

9   Attorneys for Plaintiff

10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13   _____
     GARY DAVIS, Individually and On Behalf of  )   Case No.:
14   All Others Similarly Situated,              )
                                                 )   **CLASS ACTION COMPLAINT**
15                            Plaintiff,         )
                      vs.                        )
16                                               )
                                                 )   <u>JURY TRIAL DEMANDED</u>
17   FREMONT INVESTMENT ADVISORS,                )
     INC., FREMONT MUTUAL FUNDS, INC.,           )
18   ARMSTRONG SHAW ASSOCIATES, INC.,            )
     DELAWARE INTERNATIONAL ADVISERS             )
19   LTD.., JARISLOWSKY FRASER LIMITED;          )
     KERN CAPITAL MANAGEMENT LLC,                )
20   NORTHSTAR CAPITAL MANAGEMENT,               )
     INC., TIMESSQUARE CAPITAL                   )
21   MANAGEMENT, INC., LEND LEASE                )
     ROSEN REAL ESTATE SECURITIES LLC,           )
22   QUASAR DISTRIBUTORS, LLC; FREMONT           )
     GLOBAL FUND, FREMONT                        )
23   INTERNATIONAL GROWTH FUND,                  )
     FREMONT LARGE CAP VALUE FUND                )
24   (FORMERLY FREMONT NEW ERA VALUE             )
     FUND), FREMONT LARGE CAP GROWTH             )
25   FUND (FORMERLY, FREMONT NEW ERA             )
     GROWTH FUND), FREMONT                       )
26   STRUCTURED CORE FUND (FORMERLY              )
     FREMONT GROWTH FUND), FREMONT               )
27   U.S. SMALL CAP FUND, FREMONT U.S.           )
                 [continued on subsequent page]
28

_____
CLASS ACTION COMPLAINT                          Case No.: _____

1  MICRO-CAP FUND, FREMONT REAL               )
   ESTATE SECURITIES FUND, FREMONT            )
2  BOND FUND, FREMONT CALIFORNIA              )
   INTERMEDIATE TAX-FREE FUND,                )
3  FREMONT MONEY MARKET FUND, and             )
   DOES 1 - 100,                              )
4                          Defendants.        )
                                              )
5  _____)
                                              )
   This Document Relates To:                  )
6                                             )
   _____ALL ACTIONS_____)
7

        Plaintiff, Gary Davis ("Plaintiff"), individually and on behalf of all other persons similarly

situated, by his undersigned attorneys, for his complaint against defendants, alleges the following

based upon personal knowledge as to himself and his own acts, and information and belief as to all

other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys,

which included, among other things, a review of the defendants' public documents, conference calls

and announcements made by the defendants, United States Securities and Exchange Commission

("SEC") filings, wire and press releases published by and regarding the Fremont Family of Mutual

Funds and advisories about the funds, and information readily obtainable on the Internet.  Plaintiff

believes that substantial evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE OF THE ACTION

        1.      This is a class action on behalf of a class (the "Class") of all purchasers, redeemers

and holders of Fremont family of funds (as defined below), who purchased, held, or otherwise

acquired shares between March 15, 1999 and March 1, 2004 (the "Class Period"), seeking to pursue

remedies under the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of

1934 (the "Exchange Act"), the Investment Company Act of 1940 (the "Investment Company

Act"), and for common law breach of fiduciary duties.

## JURISDICTION AND VENUE

        2.      The claims asserted herein arise under and pursuant to Sections 10(b), and 20(a) of

the Exchange Act, [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder [17

C.F.R. §240.10b-5].  Additionally, this action arises under Sections 11 and 15 of the Securities Act

CLASS ACTION COMPLAINT                                    Case No.: _____

1  of 1933 (the "Securities Act") [15 U.S.C. §§ 77k, 77l(a)(2), and 77(o)] and pursuant to §§ 34 and 36

2  of the Investment Company Act [15 U.S.C. §§ 80a-33 and 35].

3       3.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of

4  the Exchange Act of 1934 [15 U.S.C. § 78aa]; Section 22 of the Securities Act [15 U.S.C. § 77v];

5  and §§ 34 and 36 of the Investment Company Act [15 U.S.C. § 80a-35].

6       4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as many of the acts

7  and practices complained of herein occurred in substantial part in this District.

8       5.     In connection with the acts alleged in this complaint, defendants, directly or

9  indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

10  to, the mails, interstate telephone communications and the facilities of the national securities

11  markets.

12  **PARTIES**

13       6.     Plaintiff Gary Davis bought and held shares of Fremont Bond Fund during the Class

14  Period and has suffered damages as a result of the wrongful acts of defendants as alleged herein.

15       7.     Defendant Fremont Investment Advisors, Inc.(referred to as the "Advisor"), located

16  at 333 Market Street, Suite 2600, San Francisco, California, provides Fremont Mutual Funds (the

17  "Funds") with investment management and administrative services.

18       8.     Defendant Armstrong Shaw Associates, Inc. ("Armstrong Shaw") is a sub-advisor to

19  the Fremont Funds that was hired by Advisor to manage or co-manage the funds' investment

20  portfolio.  Armstrong Shaw maintains its headquarters at 45 Grove Street,  New Canaan,

21  Connecticut 06840.

22       9.     Defendant Delaware International Advisers Ltd. ("Delaware International") is a sub-

23  advisor to the Fremont Funds that was hired by Advisor to manage or co-manage the funds'

24  investment portfolio.  Delaware International is a wholly-owned subsidiary of Delaware Investment

25  Advisers and is located at 80 Cheapside, Third Floor, London EC2V 6EE.

26       10.     Defendant Jarislowsky Fraser Limited ("JFL") is a sub-advisor to the Fremont Funds

27  that was hired by Advisor to manage or co-manage the funds' investment portfolio.  JFL maintains

28  its headquarters at 1010 Sherbrooke St. West Suite 2005, Montreal, Quebec H3A 2R7.

11.     Defendant Kern Capital Management LLC ("KCM") is a sub-advisor to the Fremont Funds that was hired by Advisor to manage or co-manage the funds' investment portfolio. KCM is headquartered at 114 West 47th Street, Suite 1926, New York, New York 10036.

12.     Defendant TimesSquare Capital Management, Inc. ("TimesSquare").is a sub-advisor to the Fremont Funds that was hired by Advisor to manage or co-manage the funds' investment portfolio. TimesSquare is headquartered at Four Times Square, 25th Floor, New York, NY 10036.

13.     Defendant Northstar Capital Management, Inc. ("Northstar") is a sub-advisor to the Fremont Funds that was hired by Advisor to manage or co-manage the funds' investment portfolio. Northstar is headquartered at 1580 Lincoln Street, Suite 1100, Denver, CO. 80203.

14.     Defendant Lend Lease Rosen Real Estate Securities LLC ("Lend Lease Rosen") is a sub-advisor to the Fremont Funds that was hired by Advisor to manage or co-manage the funds' investment portfolio. Lend Lease Rosen is located at 1995 University Avenue, Suite 552, Berkeley, California 94704.

15.     Defendants Advisor, Armstrong Shaw, Delaware International, JFL, KCM, TimesSquare, Northstar, and Lend Lease Rosen are collectively referred to as the "Advisor Defendants."

16.     Defendant Quasar Distributors, LLC ("Distributor") is the distributor for the Fremont Family of Mutual Funds and is located at 615 East Michigan Street Milwaukee, WI 53202.

17.     Defendant Fremont Mutual Funds, Inc. (the "Fund Registrant") is the registrant of the Fremont Family of Mutual Funds. The Fund Registrant maintains its headquarters as 333 Market Street, Suite 2600, San Francisco, California.

18.     Defendants Fremont Global Fund, Fremont International Growth Fund, Fremont Large Cap Value Fund (formerly Fremont New Era Value Fund), Fremont Large Cap Growth Fund (formerly Fremont New Era Growth Fund), Fremont Structured Core Fund (formerly Fremont Growth Fund), Fremont U.S. Small Cap Fund, Fremont U.S. Micro-Cap Fund, Fremont Real Estate Securities Fund, Fremont Bond Fund, Fremont California Intermediate Tax-free Fund, Fremont Money Market Fund (collectively referred to as the " Fremont Funds") are mutual funds that are registered under the Investment Company Act and managed by the Advisor Defendants.

CLASS ACTION COMPLAINT                                                    Case No.: _____

19.     The true names and capacities (whether individual, corporate, associate, or otherwise) of defendants Does 1 through 100, inclusive, and each of them, are unknown to Plaintiff, who sues said defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the defendants fictitiously named herein is legally responsible in some actionable manner for the events described herein, and thereby proximately caused the damage to the Plaintiff and the members of the Class.

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

20.     Plaintiff brings this action as a federal class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class (the "Class"), consisting of all purchasers, redeemers and holders of the mutual fund shares that are the subject of this lawsuit, who purchased, held, or otherwise acquired shares between March 15, 1999 and March 1, 2004, inclusive, (the "Class Period") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

22.     Plaintiff's claims are typical of the claims of the members of the Class, because Plaintiff and all of the Class members sustained damages arising out of defendants' wrongful conduct complained of herein.

23.     Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel who are experienced and competent in class actions and securities litigation.

24.     A Class Action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation makes it impossible for the members of the Class to individually

CLASS ACTION COMPLAINT                                                    Case No.: _____

1  redress the wrongs done to them.  There will be no difficulty in the management of this action as a

2  class action.

3         25.     Questions of law and fact common to the members of the Class predominate over

4  any questions that may affect only individual members, in that defendants have acted on grounds

5  generally applicable to the entire Class.  Among the questions of law and fact common to the Class

6  are:

7               (a)     Whether the federal securities laws were violated by defendants' acts as

8  alleged herein;

9               (b)     Whether defendants breached their fiduciary duties by engaging in fraudulent

10  activity; and

11               (c)     Whether the members of the Class have sustained damages and, if so, what is

12  the appropriate measure of damages.

13  ## SUBSTANTIVE ALLEGATIONS

14  ## BACKGROUND

15         26.     This action concerns a fraudulent scheme and course of action which was intended to

16  and indeed did benefit mutual funds and their advisors at the expense of mutual fund investors.  In

17  connection therewith, defendants violated their fiduciary duties to their customers in return for

18  substantial fees and other income for themselves and their affiliates.

19         27.     The defendants' wrongful conduct involved "timing" of mutual funds.  "Timing" is

20  an investment technique involving short-term, "in and out" trading of mutual fund shares.  The

21  technique is designed to exploit inefficiencies in the way mutual fund companies price their shares.

22  It is widely acknowledged that timing inures to the detriment of long-term shareholders.  Because of

23  this disadvantageous effect, mutual fund prospectuses typically state that timing is monitored and

24  the funds work to prevent it.  Nonetheless, in return for investments that will increase fund

25  managers' fees, fund managers enter into undisclosed agreements to allow timing.

26         28.     In fact, certain mutual fund companies have employees (generally referred to as the

27  "timing police") who are supposed to detect "timers" and put a stop to their short-term trading

28  activity.  Nonetheless, defendants arranged to give market timers a "pass" with the timing police,

1   such that the timing police would look the other way rather than attempt to shut down their short-

2   term trading.

3       29.     The mutual fund prospectuses for the funds at issue created the misleading

4   impression that mutual funds were vigilantly protecting investors against the negative effects of

5   timing. In fact, the opposite was true: defendants sold the right to time their funds to other hedge

6   fund investors.  The prospectuses were silent about these arrangements.

7       30.     As a result of the "timing" of mutual funds, the Doe Defendants, other timers, and

8   defendants and their intermediaries profited handsomely.  The losers were unsuspecting long-term

9   mutual fund investors.  Defendants' profits came dollar-for-dollar out of their pockets.

10                                      **TIMING**

11      31.     Mutual funds are designed for buy-and-hold investors, and are therefore the favored

12  homes for Americans' retirement and college savings accounts.  Nevertheless, quick-turnaround

13  traders routinely try to trade in and out of certain mutual funds in order to exploit inefficiencies in

14  the way they set their Net Asset Values or "NAVs."

15      32.     This strategy works only because some funds use "stale" prices to calculate the value

16  of securities held in the fund's portfolio.  These prices are "stale" because they do not necessarily

17  reflect the "fair value" of such securities as of the time the NAV is calculated.  A typical example

18  would be a U.S. mutual fund that holds Japanese shares.  Because of the time zone difference, the

19  Japanese market may close at 2:00 a.m. New York time.  If the U.S. mutual fund manager uses the

20  closing prices of the Japanese shares in his or her fund to arrive at an NAV at 4:00 p.m. in New

21  York, he or she is relying on market information that is fourteen hours old.  If there have been

22  positive market moves during the New York trading day that will cause the Japanese market to rise

23  when it later opens, the stale Japanese prices will not reflect them, and the fund's NAV will be

24  artificially low. Put another way, the NAV does not reflect the true current market value of the

25  stocks the fund holds.  On such a day, a trader who buys the Japanese fund at the "stale" price is

26  virtually assured of a profit that can be realized the next day by selling.  Taking advantage of this

27  kind of short-term arbitrage repeatedly in a single mutual fund is called "timing" the fund.

28

CLASS ACTION COMPLAINT                                    Case No.: _____

33.     Effective timing captures an arbitrage profit.  The arbitrage profit from timing comes dollar-for-dollar out of the pockets of the long-term investors: the timer steps in at the last moment and takes part of the buy-and-hold investors' upside when the market goes up, so the next day's NAV is reduced for those who are still in the fund.  If the timer sells short on bad days -- as the Doe Defendants did -- the arbitrage has the effect of making the next day's NAV lower than it would otherwise have been, thus magnifying the losses that investors are experiencing in a declining market.

34.     Besides the wealth transfer of arbitrage (called "dilution"), timers also harm their target funds in a number of other ways.  They impose their transaction costs on the long-term investors.  Indeed, trades necessitated by timer redemptions can also lead to realization of taxable capital gains at an undesirable time, or may result in managers having to sell stock into a falling market.  Accordingly, fund managers often seek to minimize the disruptive impact of timers by keeping cash on hand to pay out the timers' profits without having to sell stock.  This "strategy" does not eliminate the transfer of wealth out of the mutual fund caused by timing; it only reduces the administrative cost of those transfers.  However, at the same time it can also reduce the overall performance of the fund by requiring the fund manager to keep a certain amount of the funds's assets in cash at all times, thus depriving the investors of the advantages of being fully invested in a rising market.  Some fund managers even enter into special investments as an attempt to "hedge" against timing activity (instead of just refusing to allow it), thus deviating altogether from the ostensible investment strategy of their funds, and incurring further transaction costs.

35.     Mutual fund managers are aware of the damaging effect that timers have on their funds.  While it is virtually impossible for fund managers to identify every timing trade, large movements in and out of funds -- like those made by the Doe Defendants-- are easy for managers to spot.  And mutual fund managers have tools to fight back against timers.

36.     Fund managers typically have the power to simply reject timers' purchases.  As fiduciaries for their investors, mutual fund managers are obliged to do their best to use these weapons to protect their customers from the dilution that timing causes.

CLASS ACTION COMPLAINT                                    Case No.: _____

37.     The incentive to the defendant mutual funds to engage in such wrongdoing is as follows.  Typically a single management company sets up a number of mutual funds to form a family.  While each mutual fund is in fact its own company, as a practical matter the management company runs it.  The portfolio managers who make the investment decisions for the funds and the executives to whom they report are, all typically employees of the management company, not the mutual funds themselves.  Still, the management company owes fiduciary duties to each fund and each investor.

38.     The management company makes its profit from fees it charges the funds for financial advice and other services.  These fees are typically a percentage of the assets in the fund, so the more assets in the family of funds, the more money the manager makes.  The timer understands this perfectly, and frequently offers the manager more assets in exchange for the right to time.  Fund managers have succumbed to temptation and allowed investors in the target funds to be hurt in exchange for additional money in their own pockets in the form of higher management fees.

39.     Thus, by keeping money -- often many million dollars -- in the same family of mutual funds (while moving the money from fund to fund), The Doe Defendants assured the manager that he or she would collect management and other fees on the amount whether it was in the target fund, the resting fund, or moving in between.  In addition, sometimes the manager would waive any applicable early redemption fees.  By doing so, the manager would directly deprive the fund of money that would have partially reimbursed the fund for the impact of timing.

40.     As an additional inducement for allowing the timing, fund managers often received "sticky assets."  These were typically long-term investments made not in the mutual fund in which the timing activity was permitted, but in one of the fund manager's financial vehicles (e.g., a bond fund or a hedge fund run by the manager) that assured a steady flow of fees to the manager.

41.     These arrangements were never disclosed to mutual fund investors. On the contrary, many of the relevant mutual fund prospectuses contained materially misleading statements assuring investors that the fund managers discouraged and worked to prevent mutual fund timing.

## THE SCHEME WITHIN THE FREMONT FUNDS

42.     On September 3, 2003, the New York State Attorney General Elliot Spitzer (the "Attorney General") attacked the mutual fund industry by filing a complaint charging fraud against Stern and Canary in connection with the unlawful mutual practices of late trading and timing.  More specifically, the Attorney General alleged the following: "Canary developed a complex strategy that allowed it to in effect sell mutual funds short and profit on declining NAVs."  Additionally, the Attorney General alleged that Canary set up arrangements with Bank of America, Bank One, Janus, and Strong to late trade and time those companies respective mutual funds.  The Attorney General further alleged:

> Bank of America . . .(i) set Canary up with a state-of-the art electronic late trading platform, allowing it to trade late in the hundreds of mutual funds that the bank offers to its customers, (ii) gave Canary permission to time the Nations Funds Family (iii) provided Canary with approximately $300 million of credit to finance this late trading and timing, and (iv) sold Canary the derivative short positions it needed to time the funds as the market dropped. None of these facts were disclosed in the Nations Funds prospectuses. In the process, Canary became one of Bank of America's largest customers. The relationship was mutually beneficial in that Canary made tens of millions through late trading and timing, while the various parts of the Bank of America that serviced Canary made millions themselves.

43.     In connection with an examination of active trading of mutual fund shares by the United States Securities and Exchange Commission ("SEC") and the Attorney General, defendants received inquiries and subpoenas for documents from those agencies.

44.     On March 1, 2004, the Advisor disclosed the following:

The New York State Attorney General and the Securities and Exchange Commission have asked a large number of mutual fund organizations, including FIA and the Funds, to supply information about their trading activities. In addition, we have received a request for production of documents from the office of the U. S. Attorney in the Northern District of California, and we believe that other investment advisors and funds have received similar requests. We have cooperated fully with these inquiries.

> On September 18, 2003, the Board of Directors of the Funds established a Special Committee of Independent Directors to direct and oversee a comprehensive review of the facts and circumstances relevant to the Funds' trading practices. The Committee's review has identified the past existence of market timing arrangements with a few clients that may have been inconsistent with the Advisor's and the Fund's

CLASS ACTION COMPLAINT                                      Case No.: _____

own policies. The last such arrangement was terminated in October 2002. The few management personnel who we believe may have initiated, negotiated, or approved those arrangements are no longer employees of the Advisor for unrelated reasons. On January 29, 2004, the staff of the Securities and Exchange Commission issued a commonly-called "Wells notice" to the Advisor, indicating their intention to recommend that the Commission authorize an action against the Advisor in connection with the noted arrangements. One current and at least one former employee of the Advisor, both of whom were formerly officers of the Funds, also received a Wells notice. It is possible that these matters and/or other developments resulting from these matters could result in increased redemptions or other adverse consequences to the Funds. However, the Advisor believes that these matters will not have a material adverse effect on the Funds or on the Advisor's ability to perform its investment advisory services relating to the Funds.

45.     As such, defendants have breached their fiduciary duties to Plaintiff and the class by lying to investors about their effort to curb market timers by entering into undisclosed agreements intended to boost their fees and permitting the Doe Defendants and others to time the mutual funds. As a result, defendants have violated the Securities Act, the Exchange Act, the Investment Company Act, and common law fiduciary duties.

## THE FREMONT FUNDS' PROSPECTUSES WERE

## MATERIALLY FALSE AND MISLEADING

46.     The Prospectuses falsely stated that the Fremont Funds actively safeguarded shareholders from the recognized harmful effects of timing.  For example, in language that typically appeared in the Prospectuses, the Prospectus acknowledged that "short-term trading" is harmful to shareholders and represented that the Fremont Funds deters the practice, stating as follows:

Fremont has put several safeguards in place which are intended to protect the interests of our shareholders.

***

ABUSIVE TRADING PRACTICES: REJECTION OF ORDERS

Excessive or short-term trading (such as market timing) in Fund shares may harm performance by compromising portfolio management strategies and increasing Fund expenses. The Funds may reject a purchase order and may terminate or restrict the exchange privilege of any investor or group of investors, or person acting on behalf of any investor or investors, whose pattern of trading or transaction history involves, in the opinion of the Funds, actual or potential harm to the Funds. The Funds or the Transfer Agent may notify the investor that a purchase order or an exchange has been rejected after the day the order is placed or after acceptance by an intermediary.

CLASS ACTION COMPLAINT                                    Case No.: _____

Fremont reserves the right to revoke the transaction privileges of any shareholder at any time if he or she has used abusive language or misused the Internet or phone privileges when making purchases and exchange requests or account inquiries.

ABUSIVE TRADING PRACTICES: RISKS FROM TRANSACTIONS BY CERTAIN SHAREHOLDERS

The Funds are not intended for excessive or short-term trading (such as market timing), which may harm performance by compromising portfolio management strategies and increasing Fund expenses. However, the Funds receive purchase and sales orders through financial intermediaries and cannot always know or reasonable detect excessive trading that may be facilitated by these intermediaries or by the use of combined or omnibus accounts by those intermediaries. Investors also will sometimes attempt to use various other trading and ownership techniques that are intended to conceal or avoid detection of their otherwise impermissible or abusive trading in shares of the funds. Investors who have not engaged in market timing may also be prevented from exchanging or purchasing shares of the Fund if Fremont believes the intermediary, adviser or representative associated with that investor's account has otherwise been involved in excessive or short-term trading on behalf of their accounts or investors.

47.     Given that defendants  allowed market timing of its funds to occur, its prospectuses were false and misleading because they failed to disclose the following:  (a) that defendants had entered into unlawful agreements allowing the Doe Defendants to time the trading of the Fremont Funds shares; (b) that, pursuant to those agreements, the Doe Defendants regularly timed the Fremont Funds; (c) that, contrary to the representations in the Prospectuses, defendants only enforced their policy against frequent traders selectively; (d) that the defendants regularly allowed the Doe Defendants to engage in trades that were disruptive to the efficient management of the Fremont Funds and/or increased the Fremont Funds' costs; thereby reducing the Fremont Funds actual performance; and (e) the Prospectuses failed to disclose that, pursuant to the unlawful agreements, the Doe Defendants benefitted financially at the expense of Fremont Funds' investors including Plaintiff and other members of the Class.

## UNDISCLOSED ADVERSE INFORMATION

48.     The market for the Fremont Funds was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, the Fremont Funds traded at distorted prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired the Fremont Funds relying upon the integrity

1    of the NAV for the Fremont Funds and market information relating to the Fremont Funds, and have

2    been damaged thereby.

3        49.    During the Class Period, defendants materially misled the investing public, thereby

4    distorting the NAV of the Fremont Funds, by allowing the Doe Defendants to time the Fremont

5    Funds.

6        50.    At all relevant times, the material misrepresentations and omissions particularized in

7    this Complaint directly or proximately caused or were a substantial contributing cause of the

8    damages sustained by Plaintiff and other members of the Class.

9                    **ADDITIONAL SCIENTER ALLEGATIONS**

10       51.    As alleged herein, defendants acted with scienter in that defendants knew that the

11   public documents and statements issued or disseminated in the name of the Fremont Funds were

12   materially false and misleading; knew that such statements or documents would be issued or

13   disseminated to the investing public; and knowingly and substantially participated or acquiesced in

14   the issuance or dissemination of such statements or documents as primary violations of the federal

15   securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

16   information reflecting the true facts regarding the Fremont Funds, their control over, and/or receipt

17   and/or modification of the Fremont Funds allegedly materially misleading misstatements and/or

18   their associations with the Fremont Funds which made them privy to confidential proprietary

19   information concerning the Fremont Funds, participated in the fraudulent scheme alleged herein.

20       52.    Additionally, the defendants were highly motivated to allow and facilitate the

21   wrongful conduct as well as participated in and/or had actual knowledge of the fraudulent conduct

22   alleged herein.  In exchange for allowing the unlawful practices alleged herein, the defendants,

23   among other things, received increased management fees from "sticky assets" as well as an

24   increased number of transactions in and out of the funds, and were able to profit from this illegal

25   activity.  In short, defendants siphoned money out of the mutual funds and into their own pockets.

26       53.    The defendants were motivated to participate in the wrongful scheme by the

27   enormous profits they derived thereby.  They systematically pursued the scheme with full

28   knowledge of its consequences to other investors.

---

**Applicability Of Presumption Of Reliance:**

**Fraud-On-The-Market Doctrine**

54.     At all relevant times, the market for the Fremont Funds was an efficient market for the following reasons, among others:

(a) The Fremont Funds met the requirements for listing, and were listed and actively traded on a highly efficient and automated market;

(b)  As a regulated issuer, the Fremont Funds filed periodic public reports with the SEC;

(c) The Fremont Funds regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) The Fremont Funds were followed by several mutual fund analysts who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

55.     As a result of the foregoing, the market for the Fremont Funds promptly digested current information regarding the Fremont Funds from all publicly available sources and reflected such information in the Fremont Funds' NAV.  Under these circumstances, all purchasers of the Fremont Funds during the Class Period suffered similar injury through their purchase of the Fremont Funds' NAV at distorted prices and a presumption of reliance applies.

**NO SAFE HARBOR**

56.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein,

1   defendants are liable for those false forward-looking statements because at the time each of those

2   forward-looking statements was made, the particular speaker knew that the particular forward-

3   looking statement was false, and/or the forward-looking statement was authorized and/or approved

4   by an executive officer of the defendants who knew that those statements were false when made.

### COUNT ONE

### AGAINST THE FUND REGISTRANT FOR VIOLATIONS

### OF SECTION 11 OF THE SECURITIES ACT

8   57.     Plaintiff repeats and realleges each and every allegation contained above as if fully

9   set fort herein, except that, for purposes of this claim, Plaintiff expressly excludes and disclaims any

10  allegation that could be construed as alleging fraud or intentional or reckless misconduct and

11  otherwise incorporates the allegations contained above.

12  58.     This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k,

13  on behalf of the Plaintiff and other members of the Class against the Fund Registrants.

14  59.     The Fund Registrant is the registrant for the Fremont Funds sold to Plaintiff and the

15  other members of the Class and is statutorily liable under Section 11.   The Fund Registrant issued,

16  caused to be issued and participated in the issuance of the materially false and misleading written

17  statements and/or omissions of material facts that were contained in the Prospectuses.

18  60.     Plaintiff was provided with the Fremont Bond Fund Prospectus and, similarly, prior

19  to purchasing units of each of the other Fremont Funds, all Class members likewise received the

20  appropriate prospectus.  Plaintiff and other Class members purchased shares of the Fremont Funds

21  traceable to the relevant false and misleading Prospectuses and were damaged thereby.

22  61.     As set forth herein, the statements contained in the Prospectuses, when they became

23  effective, were materially false and misleading for a number of reasons, including that they stated

24  that it was the practice of the Fremont Funds to monitor and take steps to prevent timed trading

25  because of its adverse effect on fund investors, and that the trading price was determined as of 4

26  p.m. each trading day with respect to all investors when, in fact, select investors (the Does named as

27  defendants herein) were allowed to engage in timed trading.  The Prospectuses failed to disclose

28  and misrepresented, *inter alia*, the following material and adverse facts:  (a) that defendants had

14

1    entered into unlawful agreements allowing the Doe Defendants to time its trading of the Fremont

2    Funds shares; (b) that, pursuant to those agreements, the Doe Defendants regularly timed the

3    Fremont Funds; (c) that, contrary to the representations in the Prospectuses, the Fremont Funds only

4    enforced their policy against frequent traders selectively; (d) that the defendants regularly allowed

5    the Doe Defendants to engage in trades that were disruptive to the efficient management of the

6    Fremont Funds and/or increased the Fremont Funds' costs; thereby reducing the Fremont Funds

7    actual performance; and (e) the Prospectuses failed to disclose that, pursuant to the unlawful

8    agreements, the Doe Defendants benefitted financially at the expense of Fremont Funds' investors

9    including Plaintiff and other members of the Class.

10        62.    At the time they purchased the Fremont Funds' shares traceable to the defective

11   Prospectuses, Plaintiff and Class members were without knowledge of the facts concerning the false

12   and misleading statements or omission alleged herein and could not reasonably have possessed such

13   knowledge.  This claim was brought within the applicable statute of limitations.

14                              **COUNT TWO**

15   **AGAINST THE ADVISOR DEFENDANTS AND DISTRIBUTOR AS CONTROL PERSONS**

16           **FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT**

17        63.    Plaintiff repeats and realleges each and every allegation contained above, except that

18   for purposes of this claim, Plaintiff expressly excludes and disclaims any allegation that could be

19   construed as alleging fraud or intentional reckless misconduct and otherwise incorporates the

20   allegations contained above.

21        64.    This Claim is brought pursuant to Section 15 of the Securities Act against the

22   Advisor and Distributor as control persons of the Fund Registrant.  It is appropriate to treat these

23   defendants as a group for pleading purposes and to presume that the false, misleading, and

24   incomplete information conveyed in the Fremont Funds' public filings, press releases and other

25   publications are the actions of the Advisor and Distributor.

26        65.    The Fund Registrant is liable under Section 11 of the Securities Act as set forth

27   herein.

28

CLASS ACTION COMPLAINT                                    Case No.: _____

66.     The Advisor and Distributor are each a "control person" of the Fund Registrant within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control and/or ownership. At the time Plaintiff and other members of the Class purchased shares of the Fremont Funds, by virtue of their positions of control and authority over the Fund Registrant directly and indirectly, had the power and authority, and exercised the same, to cause the Fund Registrant to engage in the wrongful conduct complained of herein.  The Fund Registrant issued, caused to be issued, and participated in the issuance of materially false and misleading statements in the Prospectuses.

67.     Pursuant to Section 15 of the Securities Act, by reason of the foregoing, the Advisor and Distributor are liable to Plaintiff and the other members of the Class for the Fund Registrant's primary violations of Section 11 of the Securities Act.

68.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages against the Advisor and Distributor.

<u>**COUNT THREE**</u>

<u>**VIOLATION OF SECTION 10(b) OF**</u>

<u>**THE EXCHANGE ACT AGAINST AND RULE 10b-5**</u>

<u>**PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS**</u>

69.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

70.     During the Class Period, each of the defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did deceive the investing public, including Plaintiff and the other Class members, as alleged herein and caused Plaintiff and other members of the Class to purchase Fremont Funds shares or interests at distorted prices and otherwise suffered damages.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

71.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a

16

1   fraud and deceit upon the purchasers of the Fremont Funds, including Plaintiff and other members

2   of the Class, in an effort to enrich themselves through undisclosed manipulative trading tactics by

3   which they wrongfully appropriated Fremont Funds' assets and otherwise distorted the pricing of

4   their securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants

5   are sued as primary participants in the wrongful and illegal conduct and scheme charged herein.

6        72.     Defendants, individually and in concert, directly and indirectly, by the use, means or

7   instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

8   continuous course of conduct to conceal adverse material information about the Fremont Funds

9   operations, as specified herein.

10        73.     These defendants employed devices, schemes and artifices to defraud and a course of

11   conduct and scheme as alleged herein to unlawfully manipulate and profit from secretly timed

12   trading and thereby engaged in transactions, practices and a course of business which operated as a

13   fraud and deceit upon Plaintiff and members of the Class.

14        74.     The defendants had actual knowledge of the misrepresentations and omissions of

15   material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

16   ascertain and to disclose such facts, even though such facts were available to them.  Such

17   defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

18   for the purpose and effect of concealing the truth.

19        75.     As a result of the dissemination of the materially false and misleading information

20   and failure to disclose material facts, as set forth above, the market price of the Fremont Funds were

21   distorted during the Class Period such that they did not reflect the risks and costs of the continuing

22   course of conduct alleged herein.  In ignorance of these facts, the market prices of the shares were

23   distorted, and relying directly or indirectly on the false and misleading statements made by the

24   defendants,  or upon the integrity of the market in which the securities trade, and/or on the absence

25   of material adverse information that was known to or recklessly disregarded by defendants but not

26   disclosed in public statements by defendants during the Class Period, Plaintiff and the other

27   members of the Class acquired the shares or interests in the Fremont Funds during the Class Period

28   at distorted prices and were damaged thereby.

CLASS ACTION COMPLAINT                                        Case No.:  _____

76.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth concerning the Fremont Funds' operations, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their shares or, if they had acquired such shares or other interests during the Class Period, they would not have done so at the distorted prices which they paid.

77.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Fremont Funds shares during the Class Period.

## COUNT FOUR

### AGAINST THE ADVISOR DEFENDANTS, DISTRIBUTOR, AND THE FUND REGISTRANT AS A CONTROL PERSON FOR THE FUNDS VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT

79.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

80.     This Claim is brought pursuant to Section 20(a) of the Exchange Act against the Advisor Defendants, as a control person of Distributor, the Fund Registrant and the Fremont Funds; against Distributor as control persons of the Fund Registrant and the Fremont Funds; and against the Fund Registrant as a control person of the Fremont Funds.

81.     It is appropriate to treat these defendants as a group for pleading purposes and to presume that the materially false, misleading, and incomplete information conveyed in the Fremont Funds' public filings, press releases and other publications are the collective actions of the Advisor, Distributor, Fund Registrants, and Fremont Funds.

82.     The Advisor, Distributor, and Fund Registrant are controlling persons of the Fremont Funds within the meaning of Section 20(a) of the Exchange Act for the reasons alleged herein. By

1   virtue of their operational and management control of the Fremont Funds' respective businesses and

2   systematic involvement in the fraudulent scheme alleged herein,  The Advisor, Distributor, and

3   Fund Registrant each had the power to influence and control and did influence and control, directly

4   or indirectly, the decision-making and actions of the Fremont Funds, including the content and

5   dissemination of the various statements which Plaintiff contends are false and misleading.  The

6   Advisor, Distributor, and Fund Registrant had the ability to prevent the issuance of the statements

7   alleged to be false and misleading or cause such statements to be corrected.

8       83.   In particular, the Advisor, Distributor, and Fund Registrant had direct and

9   supervisory involvement in the operations of the Fremont Funds and, therefore, is presumed to have

10  had the power to control or influence the particular transactions giving rise to the securities

11  violations as alleged herein, and exercised the same.

12      84.   As set forth above, the Advisor, Distributor, and Fund Registrant each violated

13  Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint.  By virtue of

14  their positions as controlling persons, The Advisor, Distributor, and Fund Registrant are liable

15  pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants'

16  wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with

17  their purchases of Fremont Funds securities during the Class Period.

18                              **COUNT FIVE**

19  **VIOLATION OF SECTION 34(b) OF THE INVESTMENT COMPANY ACT OF 1940**

20                      **AGAINST ALL DEFENDANTS**

21      85.   Plaintiff repeats and realleges each and every allegation contained above as if fully

22  set forth herein.

23      86.   This claim for relief is brought pursuant to Section 34(b) of the Investment Company

24  Act of 1940 against defendants.

25      87.   Under Section 34(b) of the Investment Company Act of 1940, it shall be unlawful for

26  any person to make any untrue statement of a material fact in any registration statement,

27  application, report, account, record, or other document filed or transmitted pursuant to this title or

28  the keeping of which is required pursuant to section 31(a) [15 USCS § 80a-30(a)]. It shall be

CLASS ACTION COMPLAINT                                    Case No.: _____

1  unlawful for any person so filing, transmitting, or keeping any such document to omit to state

2  therein any fact necessary in order to prevent the statements made therein, in the light of the

3  circumstances under which they were made, from being materially misleading.

4        88.      Here, defendants have made untrue statements of a material fact in its registration

5  statement, application, report, account, record, and/or other document filed or transmitted pursuant

6  to this title or the keeping of which is required pursuant to section 31(a) [15 USCS § 80a-30(a)].

7        89.      As such, Plaintiffs and other class members have been injured as a result of

8  defendants' untrue statements and have violated Section 34(b) of the Investment Act of 1940.

9                                  **COUNT SIX**

10  **VIOLATION OF SECTION 36(a) OF THE INVESTMENT COMPANY ACT OF 1940**

11                          **AGAINST ALL DEFENDANTS**

12        90.      Plaintiff repeats and realleges each and every allegation contained above as if fully

13  set forth herein.

14        91.      This claim for relief is brought pursuant to Section 36(a) of the Investment Company

15  Act of 1940 against defendants.  Under Section 36(a), an implied private right of action exists.  See

16  McLachlan v. Simon, 31 F. Supp.2d 731 (N.D. Cal. 1998).

17        92.      Under Section 36(a) of the Investment Company Act, defendants shall be deemed to

18  owe a fiduciary duty to Plaintiff and other class members with respect to the receipt of fees and

19  compensation that defendants receive for services of a material nature.

20        93.      Here, defendants have devised and implemented a scheme to obtain substantial fees

21  and other income for themselves and their affiliates by allowing the Doe Defendants to engage in

22  timing of the Fremont Funds throughout the Class Period and in violation of their fiduciary duties to

23  their customers, i.e., Plaintiff and class members.

24        94.      Defendants engaged in such scheme to only benefit themselves and their affiliates by

25  allowing the Doe Defendants to engage in timing of the Fremont Funds named herein in return for

26  substantial fees and other income.

27        95.      Defendants have breached the fiduciary duties owed to Plaintiff and other class

28  members by, among other things, devising this plan and scheme solely for its own benefit and by

1    failing to reveal to them material facts which would allow them to make informed decisions about

2    the true value and performance of the Fund.

3        96.    Plaintiffs and other class members have been injured as a result of defendants'

4    breach of fiduciary duty and violation of Section 36(a) of the Investment Act of 1940.

5                  **COUNT SEVENAGAINST ALL DEFENDANTS**

6                  **FOR BREACH OF FIDUCIARY DUTIES**

7        97.    Plaintiff repeats and realleges each and every allegation contained above as if fully

8    set forth herein.

9        98.    Plaintiff and the Class placed their trust and confidence in defendants to manage the

10   assets they invested in the Fremont Funds.

11       99.    Plaintiff and the Class reasonably expected that the defendants would honor

12   obligations owed to them by, among other things, observing the securities laws and honoring the

13   representations made in the Fremont Funds' prospectuses.

14       100.    The defendants aided and abetted by the other Defendants, who are co-conspirators,

15   breached its fiduciary duties to the Plaintiff and the Class by violating the securities laws and

16   breaching express and implied representations contained in the Fremont Funds' prospectuses for the

17   benefit of the Fremont Funds and each of the other defendants.

18       101.    Each of the Defendants was an active participant in the breach of fiduciary duty and

19   participated in the breach for the purpose of advancing their own interests.

20       102.    Plaintiff and the Class have been specially injured by defendants' wrongdoing.  For

21   example, those class members who redeemed their shares during the Class Period received less than

22   what they would have been entitled to had certain individuals not engaged in illegal market timing.

23   Additionally, certain members of the Class (i.e., those who purchased their mutual fund shares

24   legally), were treated differently than those purchasers that were market timers.

25       103.    The defendants aided and abetted by the other defendants, who are also co-

26   conspirators, acted in bad-faith, for personal gain and in furtherance of his, her or its own financial

27   advantage in connection with the wrongful conduct complained of in this complaint.

28

---

CLASS ACTION COMPLAINT                                    Case No.: _____

1   104. As a direct and proximate result of the defendants' foregoing breaches of fiduciary

2 duties, Plaintiff and the members of the Class have suffered damages.

3   105. The defendants, as aiders, abettors, and co-conspirators, are each jointly and

4 severally liable for an amount to be determined at trial.

5         **PRAYER FOR RELIEF**

6   WHEREFORE, Plaintiff on behalf of himself and of the Class pray for relief and judgment,

7 as follows:

8    (a) Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of

9 the Federal Rules of Civil Procedure on behalf of the Class defined herein;

10    (b) Awarding Plaintiffs and the members of the Class damages in an amount

11 which may be proven at trial, together with interest thereon;

12    (c) Awarding Plaintiffs and the members of the Class pre-judgment and post-

13 judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs;

14    (d) Awarding such other and further relief as this Court may deem just and proper

15 including any extraordinary equitable and/or injunctive relief as permitted by law or equity to

16 attach, impound or otherwise restrict the defendants' assets to assure Plaintiffs have an effective

17 remedy; and

18    (e) Such other relief as this Court deems appropriate.

19         **JURY TRIAL DEMANDED**

20   Plaintiff hereby demands a trial by jury.

21 DATED:  March 12, 2004     KAPLAN FOX & KILSHEIMER LLP

22

23       By: _____

           Laurence D. King (State Bar No. 206423)

24          KAPLAN FOX & KILSHEIMER LLP

          555 Montgomery Street, Suite 1501

25          San Francisco, CA 94111

          Telephone:  415-772-4700

26          Fax:  415-772-4707

27

28

CLASS ACTION COMPLAINT           Case No.:  _____

1    Marc A. Topaz
     Richard A. Maniskas
2    SCHIFFRIN & BARROWAY
     Three Bala Plaza East
3    Suite 400
     Bala Cynywd, PA 19004
4    Telephone:  610-667-7706

5    **Attorneys for Plaintiff**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                                      Case No.:  _____

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

_____

ATTORNEY OF RECORD FOR PLAINTIFF
GARY DAVIS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT                                    Case No.: _____

## CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

I, (print name) __Gary Davis__ ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the Complaint and authorizes its filing.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in the following securities that are the subject of this action are as follows[1]:

| Fund/Symbol | Buy/Sell | # of Shares | Date | Price |
|---|---|---|---|---|
| Fremont Bond Fund | Bought | .869 | 2/19/03 | $10.47 |
| Fremont Bond Fund | Sold | .869 | 2/25/03 | $10.47 |
| Fremont Bond Fund | Bought | 237 | 2/19/03 | $10.47 |
| Fremont Bond Fund | Sold | 237 | 2/25/03 | $10.51 |
| Fremont Bond Fund | Bought | 490.131 | 2/19/03 | $10.47 |
| Fremont Bond Fund | Bought | .080 | 2/19/03 | $10.50 |
| Fremont Bond Fund | Bought | 47 | 3/03/03 | $10.57 |
| Fremont Bond Fund | Bought | .304 | 3/03/03 | $10.56 |
| Fremont Bond Fund | Bought | 95 | 3/28/03 | $10.51 |
| Fremont Bond Fund | Bought | .147 | 3/28/03 | $10.54 |
| Fremont Bond Fund | Bought | 1.887 | 2/28/03 | $10.55 |
| Fremont Bond Fund | Bought | 1.390 | 3/31/03 | $10.54 |

[1] List additional transactions on a separate sheet of paper, if necessary.

5.    During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): _None_.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _12_ day of _March_, 2004.

**GARY DAVIS**